UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ETHEL STAMPER-KATO )<br>115-24 203rd Street )<br>St. Albans, New York 11412, )<br> )<br>　　　　　Plaintiff, )<br> )<br>　v. )<br> )<br>NATIONAL RAILROAD PASSENGER )<br>CORPORATION )<br>60 Massachusetts Ave., N.E. )<br>Washington, D.C. 20002, )<br> )<br>　　　　　Defendant. )<br> ) | Civil Action No. |

**COMPLAINT**
**(Employment Discrimination)**

Plaintiff, Ethel Stamper-Kato, complaining of the Defendant, National Railroad Passenger Corporation (hereafter "Amtrak"), hereby states as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages and injunctive relief for race discrimination and retaliation by Amtrak in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (hereafter "Title VII"), the Civil Rights Act of 1866, 42 U.S. C. § 1981 (hereafter "section 1981"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401.1, et seq. (hereafter "D.C. Human Rights Act"). As is set forth more fully below, Ethel Stamper-Kato was previously a plaintiff in class action litigation against her employer, Amtrak, alleging race discrimination. She contends that, since that litigation was concluded, she has

suffered continued discrimination and retaliation in the form of blocked advancement, inappropriate discipline and petty harassment.

2. This Court has jurisdiction over these claims under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f). Venue is properly in this Court because Amtrak's headquarters are located in the District of Columbia; because some or all of the acts complained of occurred in the District of Columbia; and because some or all of the positions Plaintiff claims were improperly denied her were located in the District of Columbia.

3. On or about February 14, 2005, Plaintiff filed a timely charge with the Newark, New Jersey office of the Equal Employment Opportunity Commission, alleging race discrimination and retaliation on the part of Amtrak in connection with the imposition of discipline and the denial of numerous applications for promotion. The Commission investigated the allegations contained in Plaintiff's charge, and on July 20, 2005, it issued a Determination finding "that the evidence obtained during the investigation establishes a violation of [Title VII], and that the evidence as a whole indicates that [Plaintiff] was subjected to discrimination and unlawful retaliation." On February 27, 2006, conciliation having failed, the Commission sent the Plaintiff a Notice of Right to Sue by regular mail.

## PARTIES

4. Plaintiff, Ethel Stamper-Kato (hereafter "Ms. Kato") is an African American woman residing at 115-24 203rd Street, Saint Albans, New York. She has been employed by Amtrak since it was established in 1973. She currently holds the position of District Manager, NJ Stations Operations.

5. Defendant, National Railroad Passenger Corporation ("Amtrak") is a corporation chartered by Congress to provide rail passenger service. Its corporate headquarters are located at 60 Massachusetts Avenue, N.E., Washington, D.C.

## COMMON FACTUAL ALLEGATIONS

6. In 1970 Ms. Kato began work for the Penn Central Railroad as a ticket sales person in Grand Central Station in New York City. She continued this work when portions of the Penn Central Railroad were taken over by Amtrak in 1973. During the years since 1973, Ms. Kato has worked hard to improve herself, both in her work at Amtrak and in her efforts to enhance her educational background.

7. Ms. Kato earned associate degrees in business administration, in 1989, and transportation management, in 1990, from Queensborough Community College. She then earned a Bachelor of Arts degree in January 1992, a Master of Science degree in Human Resources Management in January 1993, and post-graduate certificates in career counseling and organizational diagnosis and development, all from the New School for Social Research. Subsequently, she earned postgraduate certificates from the Cornell University School of Industrial Relations in collective bargaining/contract negotiations (in 1997) and in dispute resolution (in 2000). She was certified as a mediator by the Benjamin Cardozo Law School in New York in August 2000.

8. While working to broaden her educational background, Ms. Kato also continued her work at Amtrak. In the late seventies she advanced to supervisory positions in ticket sales. In 1984 she became General Supervisor-Station Services at Amtrak's Newark, New Jersey Station. This position entailed the management of five customer service operations and a 57 million

dollar annual budget. Though the title has been changed periodically, this is essentially the same position she holds today.

9. In 1996, pursuing her interest in human resources and labor relations, Ms. Kato applied for and received a position as a labor relations officer/human resources consultant in Amtrak's New York City facility. Although this position was awarded to her, and she accepted it, she was paid a salary less than was commensurate with the responsibilities.

10. In 2002 Amtrak decided to eliminate its labor relations office in New York City, thereby eliminating Ms. Kato's job. She was ultimately offered a return to her former position, when the incumbent was promoted.

11. Through much of her time at Amtrak, before and after her move to the labor relations position, Ms. Kato was treated in a fashion that was not commensurate with her experience, her educational attainments or her overall qualifications. She was repeatedly denied interviews and/or job offers for positions for which she was highly qualified and, in any event, demonstrably better qualified than the white persons who were ultimately selected. For several years during the mid to late nineties, Amtrak rejected or ignored approximately thirty applications for management positions submitted by Ms. Kato, despite her education achievements and her lengthy experience. This disparate treatment was imposed on Ms. Kato because of her race.

12. On August 20, 1998, Ms. Kato, together with twenty-eight other individuals employed by Amtrak in management level positions, initiated a class action lawsuit in the District Court for the District of Columbia, alleging race discrimination in promotions and other aspects of their employment. (Civil Action no. 1:98CV2019) Ms. Kato was a named plaintiff in that lawsuit. This litigation was concluded by the entry of a Consent Decree in September 1999.

13. Since the entry of the Consent Decree, and notwithstanding its provisions, Amtrak has continued to discriminate and retaliate against Ms. Kato by refusing to consider her for promotion opportunities, and by awarding positions for which she applied to less qualified white employees. Since April 2004 Ms. Kato has applied for nearly a dozen positions that paid more and had more responsibility than the position she has held for most of the past twenty years. She was turned down for each of these positions, notwithstanding the fact that she was qualified for them and was better qualified than the white persons who were selected.

14. Most or all of the decisions denying Ms. Kato's applications for promotion were made by Amtrak management located in its headquarters in Washington, D.C. In addition, a significant number of the positions for which Ms. Kato applied were located in Washington, D.C.

15. Ms. Kato currently earns an annual salary of $64,000. The positions for which she applied and was turned down bore annual salaries ranging from approximately $81,000 to $143,000.

16. The foregoing actions taken by Amtrak against Ms. Kato were willful and malicious and with full knowledge that they violated her rights under Title VII, section 1981 and the D.C. Human Rights Act.

17. The foregoing treatment of Ms. Kato by Amtrak and has taken a significant toll on her health. She has suffered great mental distress that has adversely affected her mental and physical health. Among other things, Ms. Kato has suffered from hypertension, or high blood pressure, migraine headaches, sleeplessness, and stress related dental problems.

18. As a consequence of the foregoing actions taken against her by Amtrak, Ms. Kato has suffered and continues to suffer monetary losses in the form of lost compensation.

## COUNT I
### (Race discrimination in violation of Title VII)

19. Plaintiff repeats and realleges all of the preceding factual allegations.

20. Amtrak has refused to consider Ms. Kato for specific promotion opportunities, and/or has rejected her applications for promotion into positions for which she was fully qualified, and better qualified than those selected, because of her race, in violation of Title VII.

## COUNT II
### (Race discrimination in violation of Section 1981)

21. Plaintiff repeats and realleges all of the preceding factual allegations.

22. Amtrak has refused to consider Ms. Kato for specific promotion opportunities, and/or has rejected her applications for promotion into positions for which she was fully qualified, and better qualified than those selected, because of her race, in violation of section 1981.

## COUNT III
### (Race discrimination in violation of the D.C. Human Rights Act)

23. Plaintiff repeats and realleges all of the preceding factual allegations.

24. Amtrak has refused to consider Ms. Kato for specific promotion opportunities, and/or has rejected her applications for promotion into positions for which she was fully qualified, and better qualified than those selected, because of her race, in violation of the D.C. Human Rights Act.

## COUNT IV
### (Retaliation in violation of Title VII)

25. Plaintiff repeats and realleges all of the preceding factual allegations.

26. Since the conclusion of the class action litigation referred to in paragraph 12, Amtrak has retaliated against Ms. Kato by deliberately acting to ensure that she has remained cut off from all opportunities for advancement. It has refused to consider Ms. Kato for specific

promotion opportunities, and/or has rejected her applications for promotion into positions for which she was fully qualified, and better qualified than those selected, all in retaliation for her participation in class action litigation against Amtrak and for otherwise acting to oppose race discrimination in employment at Amtrak, in violation of the anti-retaliation provisions of Title VII.

27. In addition, Amtrak management has inappropriately disciplined Ms. Kato and has subjected her to ongoing petty harassment in retaliation for her participation in class action litigation against Amtrak and for otherwise acting to oppose race discrimination in employment at Amtrak, in violation of the anti-retaliation provisions of Title VII.

## COUNT V
### (Retaliation in violation of Section 1981)

28. Plaintiff repeats and realleges all of the preceding factual allegations.

29. Since the conclusion of the class action litigation referred to in paragraph 12, Amtrak has retaliated against Ms. Kato by deliberately acting to ensure that she has remained cut off from all opportunities for advancement. It has refused to consider Ms. Kato for specific promotion opportunities, and/or has rejected her applications for promotion into positions for which she was fully qualified, and better qualified than those selected, all in retaliation for her participation in class action litigation against Amtrak and for otherwise acting to oppose race discrimination in employment at Amtrak, in violation of section 1981.

## COUNT VI
### (Retaliation in violation of the D.C. Human Rights Act)

30. Plaintiff repeats and realleges all of the preceding factual allegations.

31. Since the conclusion of the class action litigation referred to in paragraph 12, Amtrak has retaliated against Ms. Kato by deliberately acting to ensure that she has remained cut off

from all opportunities for advancement. It has refused to consider Ms. Kato for specific promotion opportunities, and/or has rejected her applications for promotion into positions for which she was fully qualified, and better qualified than those selected, all in retaliation for her participation in class action litigation against Amtrak and for otherwise acting to oppose race discrimination in employment at Amtrak, in violation of the anti-retaliation provisions of the D.C. Human Rights Act.

WHEREFORE Plaintiff respectfully requests this Court to enter judgment in her favor:

1) directing that Amtrak promote Ms. Kato into the next available appropriate management level position, within reasonable proximity to her residence, that comes available;

2) awarding Ms. Kato back pay to compensate her for the pay and benefits she would have received had Amtrak not denied her promotion because of her race, and/or in retaliation for her participation in activity protected under Title VII and section 1981;

3) awarding Ms. Kato front pay to compensate her for the pay and benefits she would receive in the future but for Amtrak's discriminatory and/or retaliatory conduct;

4) awarding Ms. Kato compensatory damages to compensate her for the emotional and physical distress suffered as a consequence of the discriminatory and retaliatory treatment she received from Amtrak;

5) awarding Ms. Kato punitive damages to deter Amtrak from its malicious and willful conduct violative of Title VII, section 1981, and the D.C. Human Rights Act;

6) awarding attorneys fees and litigation expenses; and

7) granting Ms. Kato such other and further relief as the Court may deem appropriate.

Respectfully submitted,

*/s/ Woodley B. Osborne*

| | |
|---|---|
| Woodley B. Osborne | Warren Kaplan |
| Bar no. 043406 | Bar no. 34470 |
| Steven Skalet | Susan Huhta |
| Bar no. 359804 | Bar no. 453478 |
| MEHRI & SKALET, PLLC | Washington Lawyers' Committee for |
| Suite 400 | Civil Rights and Urban Affairs |
| 1300 19th Street, N.W. | 11 Dupont Circle, N.W., Suite 400 |
| Washington, D.C. 20036 | Washington, D.C. 20036 |
| 202-822-5100 | 202-319-1000 |

Counsel for the Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury.